UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

CHRISTOPHER DOYLE,                          )
                                            )
                    Plaintiff,              )
                                            )          No. 2:11-CV-371
v.                                          )
                                            )          *Mattice / Lee*
COMMISSIONER OF SOCIAL SECURITY,            )
                                            )
                    Defendant.              )

<u>**REPORT AND RECOMMENDATION**</u>

Plaintiff brought this action pursuant to 42 U.S.C §§ 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying him disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. Plaintiff has moved for judgment on the pleadings and Defendant has moved for summary judgment [Docs. 12, 14]. Plaintiff alleges the Administrative Law Judge ("ALJ") failed to give controlling weight or properly discuss the opinion of Plaintiff's treating physician and failed to properly assess Plaintiff's credibility.

For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 12] be **GRANTED IN PART** to the extent it seeks remand to the Commissioner and **DENIED IN PART** to the extent it seeks an award of benefits; (2) the Commissioner's motion for summary judgment [Doc. 14] be **DENIED**; and (3) the Commissioner's decision denying benefits be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

## I.      ADMINISTRATIVE PROCEEDINGS

Plaintiff initially filed his application for DIB and SSI on August 27, 2009 alleging that he became disabled beginning May 31, 2009 (Administrative Record Transcript ("Tr.") 112-22). Plaintiff's claim was denied initially and upon reconsideration and he requested a hearing before the ALJ (Tr. 59-78). The ALJ held a hearing on May 12, 2011 during which Plaintiff was represented by an attorney (Tr. 28-50). The ALJ issued his decision on May 25, 2011 and determined Plaintiff was not disabled because there were jobs in substantial numbers in the national economy that Plaintiff could perform (Tr. 11-23). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-3). Plaintiff filed his complaint in this Court on December 6, 2011 [Doc. 1].

## II.     FACTUAL BACKGROUND

### A.      Education and Background

Plaintiff was 37 years old, a younger individual, at the disability onset date and was 38 years old at the time of the hearing and the ALJ's decision (Tr. 32, 137). Plaintiff left school before completing the ninth grade after his father was diagnosed with cancer (Tr. 33, 146). Plaintiff had past work experience as a tour guide, cell phone repairer, telecommunications line installer and repairer, factory worker (seasoning potato chips), and tanning bed assembler (Tr. 34-35).

In 2004, while working as a line installer, Plaintiff fell off a pole and was electrocuted; as a result of the fall, Plaintiff broke his neck, wrist and a couple of ribs, and dislocated his right knee (Tr. 36). Plaintiff continued to have constant neck pain and chronic lower back pain which radiated through his right leg (Tr. 36). Plaintiff testified the doctors had been unable to

determine if the electrocution and fall had caused brain damage (Tr. 36). Plaintiff was taking various medications for his pain, including over-the-counter medications when the prescription medicines did not fully take care of the pain (Tr. 37). Plaintiff had refused steroid injections due to complications family members had experienced (Tr. 37-38). Plaintiff's doctor had recommended three surgeries for Plaintiff's neck, but Plaintiff did not have the money or insurance to have the surgeries performed (Tr. 38).

Plaintiff testified that he could not work in a job that required him to stand and walk for six hours in an eight hour day (Tr. 38). Plaintiff did not think he could be on his feet for two hours in an eight hour day or be seated for six hours in an eight hour day (Tr. 38-39). He testified he could only sit, stand, or stand and walk for fifteen to twenty minutes at a time (Tr. 39). Plaintiff stated he had problems lifting a gallon of milk and could only lift up to two pounds occasionally (Tr. 39). Plaintiff lived with his mother and was not responsible for any chores; he did not go shopping and rarely left the house except for doctor's appointments (Tr. 39-40). Plaintiff testified he spent ninety percent of his time in bed and was sometimes able to rise and walk to the sofa in the den (Tr. 40, 43).

Plaintiff stated he suffered from depression, anxiety, severe social phobia, and a panic disorder (Tr. 40). Plaintiff had panic attacks at least three times a day and was seeing a psychiatrist twice a month; he also had home visits twice a month with a therapist (Tr. 40-41). Plaintiff stated he had memory problems and the pain made him snappy around others; he had problems concentrating, which could lead to panic attacks when he had to complete a task (Tr. 41). Plaintiff experienced memory problems and "zombie-like" side effects from his medications so he did not drive anywhere (Tr. 42). Plaintiff had no social interaction with others and had lost all of his friends (Tr. 43).

Case 2:11-cv-00371-HSM-SKL   Document 16   Filed 09/21/12   Page 3 of 21   PageID #: 85

**B.    Vocational Expert Testimony**

During the hearing, the ALJ sought testimony from Vocational Expert ("VE") Bentley Hankins (Tr. 14).  The ALJ first asked the VE to assume an individual restricted to light work who could not have concentrated exposure to hazards, could only maintain concentration and persistence for simple, routine, repetitive tasks, would be able to adapt to gradual and infrequent changes in the work setting, and could not have public interaction or more than occasional interaction with co-workers or supervisors (Tr. 46-47).  The VE stated that an individual with those restrictions could not perform any of Plaintiff's past relevant work (Tr. 47).  The VE testified, however, that there were other jobs in the economy that would accommodate those limitations, such as hand packers and packagers, food preparation workers, electrical or electronic equipment assemblers, or non-farm animal caretakers (Tr. 47).  The VE estimated there were 2.25 to 2.3 million such jobs nationally and 45,000 to 48,000 such jobs regionally (Tr. 47).

The ALJ next asked the VE to assume an individual who was physically restricted to sedentary work but mentally restricted by the limitations opined by Dr. Byer[1] and Robin Denison, namely having a marked loss in the ability to perform at least one of the basic mental demands of unskilled work (Tr. 47-48).  The VE testified that an individual with these restrictions would not be able to perform any of his past work or perform any other jobs in the national economy (Tr. 48).  In response to questions by Plaintiff's counsel, the VE further testified an individual with an absenteeism rate of more than five to ten percent could not work any job, as two days per month would typically be the maximum absenteeism acceptable by

---

[1]    This is likely a reference to Thomas Bier, a therapist with Frontier Health.

employer standards, even if the absenteeism was excused for medical or mental reasons (Tr. 48-49).

### C. Medical Records[2]

Plaintiff had psychological evaluations in 1984 and 1987 (Tr. 195-204). In 1984, Plaintiff was showing emotional instability, had an average IQ, and met the criteria to be considered learning disabled (Tr. 200-05). In 1987, Plaintiff's IQ placed him in the low average range of intellectual functioning and he continued to meet the criteria to be considered learning disabled (Tr. 195-99).

Plaintiff had his first visit with Dr. Aubrey D. McElroy on December 16, 2008, during which he was diagnosed with chronic pain, a history of electrocution, insomnia due to his back pain, social phobia progressively worsening over time, depression following an injury, progressively worsening over time, pain in a limb, rotator cuff syndrome, enthesopathy of knee, low back pain, cervicalgia since his neck injury, fracture of his right wrist, right ankle, and injured right knee (Tr. 386). Dr. McElroy, a family specialist, noted Plaintiff had severe chronic pain, non-responsive to nonsteroidal anti-inflammatory drugs (Tr. 387). Dr. McElroy prescribed Naprosyn for depression and Lortab and Luoxetine Hydrochloride for pain (Tr. 387).

On January 14, 2009, Plaintiff reported improvement in his insomnia, social phobia, depression, pain and cervicalgia (Tr. 389). On March 12, 2009, Plaintiff reported continued improvement, except for social phobia; Plaintiff noted his low back pain was improved with medication, but work made it worse (Tr. 393). On May 8, 2009, Plaintiff's insomnia and depression continued to improve, but Plaintiff reported social phobia and panic attacks when

---

[2] Plaintiff does not specifically challenge the ALJ's determination as to his physical impairments, only his mental impairments; as such, this Report and Recommendation will focus mainly on records documenting Plaintiff's mental health treatment, although it will address Plaintiff's physical complaints as reported to Dr. McElroy.

around other people; his back pain increased during the work day (Tr. 396). Dr. McElroy prescribed Buspar and Xanax to prevent panic attacks (Tr. 396-97). Plaintiff was prescribed Ultram on July 30, 2009 (Tr. 398). During a visit with Dr. McElroy on August 7, 2009, Plaintiff reported continued problems with social phobia but improvement with symptoms of depression with the prescribed medication (Tr. 400). Plaintiff's medications were changed (Tr. 400-01). During an office visit on November 11, 2009 to have disability forms filled out, Dr. McElroy tested Plaintiff's range of motion and opined Plaintiff's condition was fair most of the time with bouts of increased anxiety and depression (Tr. 412-13, 456-57). Plaintiff reported his father had just died (Tr. 456-47).

Mr. Arthur Stair, M.A. LPE, performed a psychological examination on Plaintiff on November 24, 2009 (Tr. 414-18). His report is countersigned by Dr. Charlton S. Stanley, supervising psychologist (Tr. 417). Plaintiff complained of depression and anxiety and reported using several medications, but had no history of psychiatric or psychological treatment (Tr. 414). Mr. Stair noted Plaintiff's intellectual ability was in the low end of the average range and Plaintiff did not exhibit bizarre behaviors or report any hallucinations (Tr. 415-16). Plaintiff reported difficulty sleeping, seemed to be mildly to moderately agoraphobic, and reported moderate panic disorder symptoms and moderate depression (Tr. 416). Plaintiff described isolating himself from people on a daily basis and staying home most of the time (Tr. 416). Mr. Stair diagnosed Plaintiff with major depressive disorder, moderate; panic disorder with mild to moderate agoraphobia; and assigned him a Global Assessment of Functioning ("GAF") score of

52.[3]  Mr. Stair opined Plaintiff could understand simple information or directions in a work setting, but his ability to comprehend and implement complex instructions was mildly impaired due to an estimated low average IQ (Tr. 417).  Mr. Stair further opined Plaintiff's ability to maintain persistence and concentration on tasks for a full workday and workweek was moderately impaired due to his major depressive disorder and moderate panic disorder with agoraphobia (Tr. 417).  Finally, Plaintiff's social relationships were moderately impaired due to panic disorder with agoraphobia (Tr. 417).

Dr. McElroy noted improved symptoms of depression with medication on December 1, 2009, but Plaintiff was still having problems with anxiety and panic attacks; Plaintiff reported having three panic attacks a day (Tr. 458).  Plaintiff had also recently hurt his back, resulting in increased low back pain (Tr. 458-59).  On January 5, 2010, Plaintiff was still having problems with social phobia and panic attacks; he reported being unable to do any exercises for his low back and the medications just took the edge off the pain (Tr. 463).  Also on January 5, 2010, Dr. Frank D. Kupstas, a state agency psychologist, filled out a psychiatric review technique and a mental residual functional capacity form (Tr. 430-45).  Dr. Kupstas noted Plaintiff's diagnoses of major depressive disorder, moderate, and social anxiety and panic attacks (Tr. 430-37).  Dr. Kupstas opined Plaintiff was moderately restricted in his activities of daily living; maintaining social functioning; and maintaining persistence, concentration, or pace (Tr. 440).  Dr. Kupstas expanded on these limitations by opining Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; work in coordination or

---

[3]  A GAF score between 41 and 50 corresponds to a "serious" psychological impairment; a score between 51 and 60 corresponds to a "moderate" impairment; and a score between 61 and 70 corresponds to a "mild" impairment. *Nowlen v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 718, 726 (E.D. Mich. 2003).

proximity with others without being distracted by them; complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers without distracting them; and respond appropriately to changes in the work setting (Tr. 443-44). Plaintiff was markedly limited in his ability to interact appropriately with the general public (Tr. 444). Dr. T.D. Stern affirmed Dr. Kupstas' assessment on May 21, 2010 (Tr. 473).

On March 4, 2010, Plaintiff returned to Dr. McElroy and reported the medications were not helping and he was having panic attacks about twice a day; his low back pain was still severe but Plaintiff reported doing his exercises (Tr. 467). A new job seemed to be making his knee worse (Tr. 467). Dr. McElroy prescribed Xanax for the panic attacks and magnesium for muscle spasms (Tr. 468). During a visit on May 3, 2010, Plaintiff reported that he quit his job because of his continued anxiety and panic attacks, and the new medication was not helping; he was still experiencing back pain and was having muscle cramps at night and in the morning (Tr. 470). Dr. McElroy prescribed Inderal for Plaintiff's panic attacks (Tr. 471).

On September 30, 2010, Dr. McElroy wrote a letter about Plaintiff's conditions in which he opined Plaintiff was "unable to do work that requires good mental recall, good social skills, lifting, pushing, or carrying heavy loads. He might be able to do work where he has minimal contact with others and is relatively sedentary with no significant stress" (Tr. 475). Dr. McElroy further opined Plaintiff met Social Security Listings 1.00 and 12.00 and it was his medical belief that Plaintiff was mentally and physically impaired to a degree that he could not hold down a job (Tr. 476). Dr. McElroy filled out forms indicating Plaintiff met the requirements of Listing 1.02B, 12.04A, 12.04B, 12.06A, 12.06B, and 12.06C (Tr. 477-92). Dr. McElroy opined Plaintiff

was markedly limited in his activities of daily living and social functioning, would often have deficiencies in concentration, persistence and pace, and had repeated episodes of decompensation (Tr. 491).

Plaintiff presented at Frontier Health for intake on September 16, 2010 and had his first evaluation with Thomas Bier on September 20, 2010 (Tr. 493-94, 537-39). Plaintiff reported panic attacks occurring two to three times a day, especially when in public or when he had to perform a task, and no social interaction with his family or friends (Tr. 493). Plaintiff indicated that he did not wish to receive medications from the doctors at Frontier Health and wanted to learn about his disorders (Tr. 514). He returned for sessions with Mr. Bier on October 4, October 18, October 28 and November 8, 2010 (Tr. 502, 507, 509, 512). In late October, Plaintiff reported having many panic attacks (Tr. 507). Plaintiff had home visits with case manager Brandi Franklin on October 7, October 22, November 22, December 3 and 17, 2010 (Tr. 495, 498, 500, 508). On January 11, 2011, Mr. Bier filled out a form indicating Plaintiff met the requirements for Listings 12.03B, 12.04A, 12.04B, and 12.06, was extremely limited in his activities of daily living and social functioning, would have constant deficiencies in concentration, persistence or pace, and had continual episodes of decompensation (Tr. 516-28). The report was countersigned by Dr. Charles E. Gaines (Tr. 528).[4]

Plaintiff had a session with therapist Robin Denison on January 25, 2011 and reported panic attacks around crowds or while performing a task when someone depended on him (Tr. 534). Plaintiff was diagnosed with major depressive disorder, recurrent, severe; panic disorder with agoraphobia; and social phobia (Tr. 535). Plaintiff was prescribed Klonopin and Remeron (Tr. 535). The evaluation was reviewed by Dr. Adrian Buckner (Tr. 535-36). Plaintiff reported

---

[4]   The parties and the ALJ refer to this doctor as Charles Garner, but it appears the signature says Charles E. Gaines. It is not entirely clear from the form which listings are met.

frequent crying and continually poor sleep during a session on February 24, 2011; he was

prescribed Celexa (Tr. 531-32). Plaintiff reported frequent crying and fair sleep on March 8,

2011 and presented with a depressed mood (Tr. 529-30).

On March 28, 2011, Ms. Denison filled out a form opining that Plaintiff met or equaled

Listings 12.04 and 12.06;[5] she opined Plaintiff would have moderate restrictions in activities of

daily living, marked difficulties in maintaining social functioning, would often have deficiencies

in concentration, persistence or pace, and continual episodes of decompensation in work or work

like settings (Tr. 540-52).

## III.    ALJ'S FINDINGS

### A.    Eligibility for Disability Benefits

The Social Security Administration determines eligibility for disability benefits by

following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant
> is not disabled.
>
> 2) If the claimant does not have a severe medically determinable
> physical or mental impairment-i.e., an impairment that
> significantly limits his or her physical or mental ability to do basic
> work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals
> one of the listings in Appendix 1 to Subpart P of the regulations
> and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from
> doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the
> claimant is not disabled.

---

[5]   This form is difficult to read because the checkmarks do not show up well on what appears to
be a copy; however, it appears these listings were checked.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### B. ALJ's Application of the Sequential Evaluation Process

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 31, 2009, the alleged onset date (Tr. 16). At step two, the ALJ found that Plaintiff had the following severe impairments: back disorder, neck disorder, arthralgias, a major depressive disorder, a panic disorder, and a social phobia (Tr. 16). At step three, the ALJ found that none of Plaintiff's physical impairments – back, knee and joint pain – satisfied the requirements of Listing 1.00 and none of Plaintiff's mental impairments or combination of impairments met the criteria of Listings 12.04, 12.06, or any other listings under section 12.00 (Tr. 17). The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following restrictions: no concentrated exposure to hazards; simple, routine, repetitive tasks; gradual and infrequent changes in the work setting; and work that did not require public interaction or more than occasional interaction with co-workers or supervisors (Tr. 18). At step four, the ALJ concluded that Plaintiff was unable to perform his past work (Tr. 22). At step five, the ALJ noted Plaintiff was 36 years old, a younger individual, as of the alleged disability onset date (Tr. 22). After considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy which Plaintiff could perform (Tr. 22-23). Accordingly, the ALJ found that Plaintiff was not disabled from May 31, 2009, his alleged onset date, through May 25, 2011, the date of the decision (Tr. 23).

# IV. ANALYSIS

## A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant,

*Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived).

### B. Dr. McElroy's Opinion

Plaintiff argues the ALJ failed to properly analyze Dr. McElroy's opinion as to his psychological and physical problems [Doc. 13 at PageID#: 58]. Plaintiff asserts Dr. McElroy opined that he had significant residual pain and serious psychological difficulties, and thus met various listings that compel a finding of disability [*id.*]. Plaintiff argues the ALJ did not specify the weight given to Dr. McElroy's opinion, did not provide any meaningful analysis of the opinion, and erred by not giving the opinion controlling weight, as it was supported by the opinions of Mr. Bier (as countersigned by Dr. Gaines) and Ms. Denison [*id.* at PageID#: 58-60]. Plaintiff contends the ALJ should have fully credited Dr. McElroy's opinion as to Plaintiff's mental impairments instead of favoring the opinion of an examiner (Mr. Stair, as countersigned by Dr. Stanley) who saw Plaintiff only one time [*id.* at PageID#: 60-61].

In response, the Commissioner argues that opinions as to whether a claimant is disabled or meets a particular listing are opinions reserved to the Commissioner and are not proper portions of medical opinions [Doc. 15 at PageID#: 70]. As such, even when these opinions are offered by treating physicians, they are not entitled to controlling weight [*id.*]. The Commissioner notes the ALJ's brief discussion of Dr. McElroy's opinion but argues the ALJ properly considered, incorporated, and accommodated the limitations opined by Dr. McElroy by

citing language from that opinion in the ALJ's RFC determination; therefore, any failure to discuss the opinion further was harmless [Doc. 15 at PageID#: 71-72]. The Commissioner argues Dr. McElroy provided no explanation for his opinion that Plaintiff met certain listings and, therefore, the ALJ could not possibly credit the statements because they are inconsistent with Dr. McElroy's opinion that Plaintiff could do *some* kind of work and the treatment notes indicating Plaintiff's depression was controlled with treatment [*id.* at PageID#: 72-73]. Moreover, the Commissioner argues that Dr. McElroy is not a mental health specialist, and that disabling mental limitations are inconsistent with Plaintiff's mental health treatment notes from both Dr. McElroy and his therapists [*id.* at PageID#: 73-77].

The law governing the weight to be given to a treating physician's opinion, often referred to as the treating physician rule, is settled: A treating physician's opinion is entitled to complete deference if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (alteration in original). Even if the ALJ determines that the treating source's opinion is not entitled to controlling weight, the opinion is still entitled to substantial deference or weight commensurate with "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." 20 C.F.R. § 404.1527(d)(2); SSR 96-2p; *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009). The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for rejecting or discounting a treating physician's opinion. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011).

These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 545 (quoting SSR 96-2p). Failure to give good reasons requires remand, even if the ALJ's decision is otherwise supported by substantial evidence, unless the error is de minimis. *Id.* at 544, 547.

The United States Court of Appeals for the Sixth Circuit recently reiterated that remand may be required when the ALJ fails to specify the weight afforded to a treating physician's opinion and fails to provide good reasons for giving the opinion an unspecified weight that is less than controlling. *Cole v. Astrue*, 661 F.3d 931, 938-39 (6th Cir. 2011). The *Cole* court stated "[t]his Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided "good reasons" for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned." *Id.* at 939 (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)). In *Cole*, the Sixth Circuit again recognized that a violation of the "good reasons" rule could only be harmless error under three circumstances: where the treating source opinion was patently deficient such that it could not be credited; where the Commissioner adopted the opinion of the treating source or made findings consistent with that opinion; or where the Commissioner otherwise met the goal of the treating source regulation, 20 C.F.R. § 404.1527(d)(2). *Id.* at 940 (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)). While each case must be evaluated to determine if the required procedures have been appropriately followed, an ALJ's failure to specify the weight afforded to a treating physician could, on its own, provide sufficient grounds for remand. *Cole*, 661 F.3d at 939-40.

Dr. McElroy's opinion states in relevant part as follows:

> It is my medical opinion that he is unable to do work that requires
> good mental recall, good social skills, lifting, pushing, or carrying
> heavy loads. He might be able to do work where he has minimal
> contact with others and is relatively sediatry [sic] with no
> significant stress. He meets the Social Security impairment listing
> 1.00 and 12.00. It is my medical belief that he is mentally and
> physically impaired to a degree that he cannot hold down a job.

(Tr. 475). The ALJ's discussion of this opinion is limited to the following statement in his

decision:

> Dr. McElroy opined that the claimant would be unable to do work
> that requires lifting, pushing or carrying heavy loads. In the
> absence of any aggressive treatment, the undersigned has gives
> [sic] the claimant the benefit of doubt in limiting him to light work
> that does not require concentration [sic] exposure to hazards.

(Tr. 19). The ALJ went on to give "great weight" to the opinion of Dr. Charlton Stanley, little

weight to the opinion of Dr. Purswani, and no weight to the assessment of Mr. Bier or the

opinion of Ms. Denison (Tr. 21).

As a preliminary matter, and as argued by the Commissioner, only a portion of Dr.

McElroy's opinion is a medical opinion that could be assigned controlling weight because

"[w]hen a treating physician . . . submits an opinion on an issue reserved to the Commissioner—

such as whether the claimant is 'disabled' or 'unable to work'—the opinion is not entitled to any

particular weight." *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010); *see

also* 20 C.F.R. § 404.1527(d)(1)-(2) ("Opinions on some issues, such as the examples that

follow, are not medical opinions . . . but are, instead, opinions on issues reserved to the

Commissioner because they are administrative findings that are dispositive of a case . . .").  It is

also worth noting that the latter half of Dr. McElroy's opinion is inconsistent with the first half,

as he essentially states that there is work Plaintiff could do in the first half but then states

Plaintiff is disabled and cannot do any work (Tr. 475-76).  Nonetheless, and properly

disregarding Dr. McElroy's opinion that Plaintiff cannot do any work, the remaining opinion states Plaintiff cannot do work requiring good mental recall, good social skills, lifting, pushing, or carrying heavy loads, but Plaintiff might be able to do work that is "relatively" sedentary, without significant stress and without much contact with others, and that he meets two listings (Tr. 475).

Plaintiff also argues that Dr. McElroy's opinion as to Plaintiff's mental impairments is supported by the assessment of Mr. Bier and Ms. Denison, which the ALJ rejected in favor of the psychological examination performed by Dr. Charlton Stanley. This argument appears to be based on two forms wherein Dr. McElroy checked off various listings (Tr. 477-92). Whether Plaintiff meets the requirements of a certain listing is an issue ultimately reserved to the Commissioner, but it is still an opinion the ALJ must consider. *See* 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart . . . the final responsibility for deciding these issues is reserved to the Commissioner."). It does not appear that the Sixth Circuit has directly addressed the weight afforded to check-box forms filled out by treating physicians, however, other circuit courts and courts within the Sixth Circuit have cast doubt on the usefulness of such "checkmark" or "multiple choice" forms when unaccompanied by explanation or unsupported by physician's notes. *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records."); *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (upholding the ALJ's discounting of a treating physician's opinion in check-list form because "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported

by the record as a whole . . . or by objective medical findings"); *Mason v. Shalala*, 994 F.2d 1058, 1065-66 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best . . . where these so-called reports are unaccompanied by thorough written reports, their reliability is suspect.") (internal quotations and citation omitted); *Boley v. Astrue*, No. 11-10896, 2012 WL 680393, at *18 (E.D. Mich. Feb. 10, 2012) ("Dr. Ulano merely checked off boxes on the form to indicate that [claimant] satisfied the requirements for listing § 12.05 'personality disorder' and almost satisfied the listing for § 12.04 'affective disorder' . . . [but] did not support any of these findings with any evidence in her treating record or any new observations from more recent treatments."); *Ahee v. Comm'r of Soc. Sec.*, No. 07-CV-12071, 2008 WL 4377652, at *4 (E.D. Mich. Sept. 22, 2008) ("The ALJ has discretion to reject a medical opinion, here a form, when the opinion is not supported by objective medical evidence.").

Here, Dr. McElroy filled out two different forms. On the first form, he made check marks by Listing 1.02, major dysfunction of a joint, which indicated Plaintiff met the requirements of that listing (Tr. 477-79). On the second form, it appears Dr. McElroy made check marks to indicate Plaintiff met Listing 12.04, affective disorder, and Listing 12.06, anxiety-related disorder; at the end of this form, titled "rating of impairment severity," Dr. McElroy indicated with respect to Listing 12.06 that Plaintiff had marked restrictions in daily living and difficulties in social functioning, would often have deficiencies of concentration, persistence and pace, and had repeated episodes of decompensation in work or work-like settings (Tr. 480-92). Shortly thereafter, Dr. McElroy wrote a letter recounting Plaintiff's medical history and offering an opinion that he could only do certain types of work and that he met Listings 1.00 and 12.00, which the ALJ mentioned briefly as referenced above (Tr. 475-76).

It is clear from the ALJ's consideration of Dr. McElroy's opinion that he did not afford the letter outlining Dr. McElroy's opinion controlling weight.  Indeed, the ALJ appears to express some degree of disbelief as to Dr. McElroy's opinion about Plaintiff's physical capabilities, but nonetheless noted he would give Plaintiff the benefit of the doubt as to his physical complaints.  Thus, I **FIND** the ALJ did not give controlling weight to Dr. McElroy's opinion.  However, the ALJ did not specify what weight the opinion was given, did not provide reasons for not giving the opinion controlling weight, and never mentioned or discussed Dr. McElroy's opinion as to Plaintiff's mental impairments or the forms he filled out indicating that Plaintiff met certain listings.  The forms may be considered "weak evidence" under the circumstances noted above, but here they were accompanied almost contemporaneously by (and could be logically considered with) Dr. McElroy's letter, which went into more detail about Plaintiff's conditions.  In addition, the "good reasons" rule must be squared with the weight that could be afforded to such forms.  Here, the ALJ offered *no* reasons for the unspecified weight he gave to Dr. McElroy's opinion – good or otherwise – and did not discuss the mental restrictions outlined in the opinion at all.  There are certainly reasons the ALJ could have offered for his decision to discount Dr. McElroy's check-mark forms and opinions stated in the letter, but the ALJ failed to do so.

Although it appears that some or all of Dr. McElroy's opinion, at least as outlined in his written letter, was incorporated into the ALJ's RFC determination, this does not mean the ALJ gave the opinion controlling weight (as I have already found he did not) and it does not mean the ALJ can necessarily be excused from the "good reasons" requirement.  Certainly, in some circumstances, a lack of compliance with the treating physician rule can be harmless error; *see Cole*, 661 F.3d at 940; *Wilson*, 378 F.3d 547; however, it is not clear here that Dr. McElroy's

opinion is patently deficient, nor is it fully adopted and credited by the ALJ in the absence of discussion, nor is it obvious the Commissioner otherwise met the goal of the treating source regulation. This third ground for harmless error generally means "the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion. . . ." *Friend*, 375 F. App'x at 551. The ALJ's decision does not make his determinations as to Dr. McElroy's opinion apparent and I **FIND** the ALJ's lack of compliance with the treating physician rule does not give this reviewing court (or Plaintiff) a clear understanding of the reasons for the weight given, or even what weight was given, to Dr. McElroy's opinion, especially as it relates to the alleged mental limitations.

In the absence of specified weight and a substantive discussion of Dr. McElroy's opinion (and any discussion of the mental limitations outlined in both Dr. McElroy's opinion or the forms he filled out), and in light of *Cole* and other recent Sixth Circuit opinions on this issue, *see e.g.*, *Johnson-Hunt v. Comm'r of Soc. Sec.*, No. 11-6160 (6th Cir. Sept. 14, 2012), I **FIND** the ALJ did not comply with the treating physician rule and I **CONCLUDE** this failure was not harmless error. Accordingly, I **CONCLUDE** Plaintiff's claim must be remanded to the Commissioner for compliance with the treating physician rule and full consideration of Dr. McElroy's opinion.[6]

---

[6] Plaintiff also raised an issue concerning the ALJ's credibility determination. Because the credibility determination may be impacted by a proper consideration and explanation of the weight given to Dr. McElroy's opinion as noted herein, I do not address the credibility determination issues raised by the parties.

## V.    CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I

**RECOMMEND** that:[7]

> (1)   Plaintiff's motion for judgment on the pleadings [Doc. 12] be
> **GRANTED IN PART** and **DENIED IN PART**.

> (2)   The Commissioner's motion for summary judgment [Doc. 14]
> be **DENIED**.

> (3)   The Commissioner's decision denying benefits be
> **REVERSED** and **REMANDED** pursuant to Sentence Four of
> 42 U.S.C. § 405(g) for action consistent with this Report and
> Recommendation.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[7] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).